IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

MAY - 7 2009

CLERK, U.S. DISTRICT COURT
By _____
    Deputy

| | | |
|---|---|---|
| BOBBY DON COOK, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 4:08-CV-316-A |
| | § | |
| TARRANT COUNTY, TEXAS, and | § | |
| TOM WILDER, individually, | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
and
ORDER

After having considered the motion for summary judgment of defendants, Tarrant County, Texas ("County"), and Tom Wilder ("Wilder"), the response of plaintiff, Bobby Don Cook, defendants' reply, the summary judgment record, and pertinent legal authorities, the court has concluded that the motion should be granted, and that all of plaintiff's alleged claims and causes of action should be dismissed.

I.

Plaintiff's Claims

In his first amended complaint filed June 16, 2008, plaintiff alleges that he was terminated from employment with the District Clerk's office, in violation of his First Amendment rights, following his support of Peter Hinojosa ("Hinojosa"), who

unsuccessfully challenged Wilder for District Clerk in the March 2006 Republican primary election. Hinojosa also filed a complaint against the same defendants on the same day as plaintiff. Hinojosa's complaint is the subject of a memorandum opinion and order signed May 5, 2009, in Case No. 4:08-CV-315-A. Plaintiff's complaint is virtually identical to Hinojosa's, except for slight variations in the facts specific to plaintiff.[1]

II.

The Summary Judgment Motion

Defendants contend that they are entitled to summary judgment on all of plaintiff's claims because he represented that he was disabled and unable to work during the relevant time period and is now estopped from asserting otherwise. Additionally, defendants contend summary judgment is appropriate because plaintiff did not engage in conduct protected by the First Amendment, but even if he did, defendants' interest in maintaining efficiency within the District Clerk's office outweighed plaintiff's protected speech, and he cannot establish causation between his protected speech and his termination. As to County, defendants argue that plaintiff cannot establish causation because the County Commissioners Court adopted a budget

---

[1] Plaintiff does not claim interference with other County employment as did Hinojosa.

reorganizing the District Clerk's office for legitimate purposes, plaintiff cannot establish that the Commissioners Court had retaliatory motives in deciding to approve the reorganization that eliminated his position, and causation cannot be imputed from Wilder to County. As to Wilder, defendants contend that he was not the final decision maker as to the elimination of plaintiff's position, he had a legitimate, non-retaliatory motive for the reorganization that eliminated plaintiff's position, and plaintiff cannot overcome Wilder's qualified immunity.

III.

Facts

The factual background set forth in the memorandum opinion and order in No. 4:08-CV-315-A is also applicable to plaintiff's claims, with the additional undisputed facts pertinent to plaintiff set forth below. The court adopts in this memorandum opinion and order by reference all facts contained on pages 3-13 of the memorandum opinion and order in 4:08-CV-315-A.

At the time of the events giving rise to this action, plaintiff held the position of Manager of the Accounting, Trust and Passport section of the District Clerk's office, reporting directly to Clete McAlister, Operations Manager. After Hinojosa filed as a candidate for District Clerk in the March 2006

Republican primary, plaintiff openly supported Hinojosa. Other employees in the District Clerk's office supported Hinojosa as well. One such employee, Andrea Ziton, sent emails to employees encouraging them to support Hinojosa. Another employee, Joella Burdette, published in the Fort Worth newspaper a letter opposing Wilder and supporting Hinojosa. Both of these employees continued their employment in the District Clerk's office after the primary election.

On May 15, 2006, Wilder informed plaintiff via letter that his position would not be funded for fiscal year 2007. Plaintiff had a serious medical condition that was becoming progressively worse. After the Commissioners Court approved the budget proposal that eliminated four high-level positions, including plaintiff's, he applied for, and was granted, disability retirement, effective September 30, 2006.

IV.

Applicable Summary Judgment Principles
and
Analysis

One of the grounds of the summary judgment motion is lack of causation, the fourth element of a prima facie case of First Amendment retaliation, as to both defendants. Defendants' argument on this topic mirrors its causation argument against

4

Hinojosa in Case No. 4:08-CV-315-A. Plaintiff's briefing on causation is also virtually identical to that in 4:08-CV-315-A. Because the court finds the analysis from 4:08-CV-315-A applicable to plaintiff and dispositive of his claims, the court adopts in this memorandum opinion and order the applicable summary judgment principals and analysis contained on pages 15-26 (up to section V.B.) of the memorandum opinion and order in No. 4:08-CV-315-A, all of which are applicable to plaintiff except for the distinction between Hinojosa becoming a candidate for District Clerk in the 2006 Republican primary election and plaintiff supporting Hinojosa's candidacy.[2]

As further evidence of Wilder's allegedly retaliatory intent, plaintiff relies on discussions he allegedly had with Tammy Scarborough, Wilder's then-administrative assistant:

> I also had discussions with Wilder's secretary, Tammy Scarborough that would indicate Wilder's so-called reorganization was for "political payback." Once she told me in early 2006 that I was going to lose my job for supporting Pete that topic came up on a fairly regular basis.

Pl.'s App. at 72. Plaintiff admitted he had no knowledge of whether Wilder actually made any statements to Scarborough

---

[2] Page 18 of 4:08-CV-315-A cites to Hinojosa's brief at 9; page 22 of 4:08-CV-315-A cites to Hinojosa's brief at 9-10. The quoted language from both cites is found in plaintiff's brief at 10.

5

concerning his position, or whether Scarborough's alleged statements had any basis in fact. Plaintiff does not contend he was present during any conversations between Wilder and Scarborough where his position was discussed or that he personally heard Wilder make any such statements. Plaintiff submitted nothing by Scarborough to confirm that she made the alleged statements or engaged in such discussions. Defendants submitted an affidavit of Scarborough, wherein she states that

> Mr. Wilder went over the reorganization plan with me because I was helping him with the budget for the upcoming year. I do not recall ever hearing Tom say he was getting rid of Pete [Hinojosa] or Bobby [Cook] because of their political opposition to him.

Defs.' App. at 533. Plaintiff's "evidence" amounts to nothing more than inadmissible hearsay and speculation, which are insufficient to create a fact issue to defeat summary judgment. See, e.g., Garcia v. Reeves County, 32 F.3d 200, 204 (5th Cir. 1994); United States v. $92,203.00 in U.S. Currency, 537 F.3d 504, 508 (5th Cir. 2008).

Plaintiff also claims that County's Human Resources Director, Tina Glenn ("Glenn"), and County Administrator, G.K. Maenius ("Maenius"), "were aware of possible retaliation claims," Pl.'s Resp. at 22, relying on Glenn's affidavit in which she states that, following a meeting between herself, Wilder, and

6

Maenius to discuss the proposed reorganization, "[they] recognized that there could be an allegation that Mr. Hinojosa's position was being recommended for elimination by Mr. Wilder as retaliation for running against Mr. Wilder." Id. (citing Defs.' App. at 234). Plaintiff omits Glenn's later statement that she "did not believe the District Clerk's proposed reorganization and reduction in the number of manager positions proposed in 2006 was improper," or that she would not hesitate to raise with the Commissioners Court any concern or suspicion she may have about any proposed personnel actions that seemed discriminatory or unfair to employees. Defs.' App. at 241. Maenius likewise affirmed that he was not aware of anything indicating the proposed elimination of plaintiff's position was in retaliation for plaintiff's support of Hinojosa, and had he had any reason to believe such was the case, he would have informed the Commissioners Court.

    Plaintiff also references affidavits submitted by members of the Commissioners Court acknowledging that in some way, they knew about the potential for litigation resulting from the reorganization. Each Commissioner, however, also confirmed that they had received nothing to indicate or make them believe that the proposed reorganization was in retaliation for plaintiff's

7

support of Hinojosa in the Republican primary; then-Commissioner Whitley affirmed that he would not have voted for the reorganization had he believed such was the case. Plaintiff has adduced nothing as would show that recognition of the potential for litigation by the Commissioners Court and other County officials is legally equivalent to approving a retaliatory basis for the proposed reorganization.[3] See, e.g., Matthews v. Columbia County, 294 F.3d 1294, 1298 (11th Cir. 2002).

V.

Conclusion and Order

For the reasons discussed above and in the memorandum opinion and order in No. 4:08-CV-315-A, the court concludes that defendants' motion for summary judgment should be granted.

Therefore,

The court ORDERS that all claims and causes of action asserted by plaintiff, Bobby Don Cook, against defendants, Tarrant County, Texas, and Tom Wilder, be, and are hereby,

---

[3] Other employees supported Hinojosa in the primary and remained employed, including one who wrote a letter to the newspaper supporting Hinojosa. The position of Cruz Hernandez ("Hernandez"), Records Room Manager, was eliminated, and he supported neither Wilder nor Hinojosa. Plaintiff submits an affidavit by Hernandez describing a confrontation between he and Wilder; however, that conversation occurred on May 18, 2006, after Wilder had already submitted his budget proposal.

dismissed with prejudice.

    SIGNED May __7__, 2009.

                                          JOHN McBRYDE  
                                          United States District Judge